575 A.2d 1240

**Markus SABA**

v.

**Charles DARLING.**

**No. 170, Sept. Term, 1987.**

Court of Appeals of Maryland.

July 3, 1990.

Albert D. Brault (Janet S. Zigler, Brault, Graham Scott & Brault, Robert Windsor, all on brief), Rockville, for appellant.

James L. Kelly, Jr. (Donahue, Ehrmantraut & Montedonico, Chartered, all on brief), Rockville, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and BLACKWELL*, J. (Retired).

COLE, Judge.

We are asked to decide whether a plaintiff may recover on a theory of negligence for injuries received as a result of an assault and battery by a defendant who, when intoxicated, has a propensity to inflict harm upon others.

We summarize so much of the evidence presented at trial as we deem necessary to portray the circumstances giving rise to the issue. It was Saturday night, 11:30 p.m., on June 16, 1984. Markus Saba and Charles Darling had never met before, but their paths were destined to cross near Windsor McKay's restaurant and bar (Bar) in Washington, D.C. Earlier that evening, Saba and his friends Mike Kaufman and Richard Abrascota met at Mike Marino's house. All of them drank beer except for Kaufman, who was the designated driver. The foursome then travelled in Kaufman's van to the Bar, where Saba drank two to three more beers during the group's hour-long stay.

Darling and his friend John Atwood had shared a six-pack of beer before travelling to the Bar, where Darling drank about five more beers. Darling and Atwood met two ladies, and the four set out to visit another bar.

The Saba group left at about the same time, with Saba and Kaufman going alone to the van parked several blocks

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

away and returning to pick up the remainder of their party at the curb near the Bar. What happened next is hotly contested. It is clear that Saba got out of the van and that Darling had not yet entered the vehicle in which he would be riding. Whether there was profanity exchanged between Saba and Darling or if Saba touched Darling is unclear. But all parties seemed to agree that Saba (who did not recall what happened) was "shadowboxing" and making karate movements near Darling for a period of time (some say four to five minutes) when Darling punched Saba in the face fracturing Saba's jaw in two places. Darling admitted that he had a history of fighting when under the influence of alcohol.

Saba filed suit in the Circuit Court for Montgomery County claiming assault and battery and negligence on the part of Darling. The assault and battery claim was voluntarily dismissed after Saba discovered that Darling had an insurance policy which limited coverage to bodily injuries caused by Darling's negligence. The matter was tried by a jury which found for Darling, apparently because they found Saba to be contributorily negligent.[1] Saba appealed on the grounds that the trial judge had refused to answer the jury's request for clarification regarding the effect that simple contributory negligence has on a claim of gross negligence.

The Court of Special Appeals, in an opinion authored by Gilbert, C.J., held that Saba's injuries were the direct result of an intentional assault and battery and that the issue of negligence should never have gone to the jury. The court refused to consider the question of whether simple contributory negligence is a bar to an action of gross negligence. *Saba v. Darling*, 72 Md.App. 487, 491–93, 531 A.2d 696, 698 (1987). The judgment was affirmed. We granted certiorari to examine the important issue raised.

---

1. During deliberations, the jury sent a note to the judge asking whether any contributory negligence at all on the part of Saba would be a bar to recovery. The trial judge declined to answer the question.

Saba would have us conclude that Darling, by drinking in public, performed an act which he knew created an unreasonable risk of physical harm to another. He contends that Darling was guilty of negligence when his abuse of alcohol caused him to injure Saba. In order to reach this conclusion, Saba urges this Court to adopt the definition of reckless disregard for safety set forth in Restatement (Second) of Torts, § 500 (1965)[2] and to apply that definition to Darling's drinking. Saba analogizes the instant situation to Comment f of § 500, and explains that Darling's drinking in public was an intentional act which had the unintended result of Saba's jaw being broken. Saba argues that Darling should have realized the strong probability that harm could result from his drinking, and that by not refraining from drinking, Darling acted with reckless disregard of the known and obvious risk that he might get into a fight and injure someone. Saba contends that he would never have been injured had Darling not been drinking.

Saba then compares the instant situation to *Nast v. Lockett*, 312 Md. 343, 539 A.2d 1113 (1988), and urges us to expand upon the holding in that case and reach the conclusion that one who becomes intoxicated does not necessarily have to get into a car to exhibit a reckless disregard for

---

**2.** Section 500 provides in pertinent part:
The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Comment f. *Intentional misconduct and recklessness contrasted.* Reckless conduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.

others. We will address each of Saba's arguments in what we consider to be the most logical order.

Despite the host of conflicting stories in the record before us, we do know that on June 16, 1984, Charles Darling intentionally hit Markus Saba causing injury to his jaw. Such an event is the *sine qua non* of an intentional tort. A battery has been defined as a harmful or offensive contact with a person resulting from an act intended to cause the person such contact. *See* Restatement (Second) of Torts, § 13. The act in question must be some positive or affirmative action on the part of the defendant. Prosser & Keeton, The Law of Torts, § 9 (5th ed.1984). The facts of the instant case as set forth above illustrate that each element of this definition has been met. Although Darling testified that he did not intend to break Saba's jaw, obviously he intended to strike Saba and the severity of the injury is of no consequence in an analysis of Darling's state of mind.

Saba apparently fails to discern the causal connection between the intentional act and the injury, and persists in attempting to fix liability on some negligent act. Despite the clear connection between the punch and the broken jaw, Saba urges us to find that his injuries were the result of Darling's drinking in public. The theory he advances is that Darling knew that when he became intoxicated he had a tendency to become violent. Thus, he had a duty to avoid this condition and thereby avoid harm to others. As support for this proposition, Saba refers us to *Nast v. Lockett, supra,* in which we dealt with the relationship among intoxication, driving an automobile, and the wanton and reckless disregard for human life.

In *Nast,* two of the three drivers involved in an automobile accident were impaired by alcohol to some extent. The plaintiff sought compensatory and punitive damages, but the trial judge did not permit the issue of punitive damages to go to the jury. The plaintiffs appealed. We held that an individual who drives while intoxicated can be found to have shown a wanton and reckless disregard for human life depending upon the degree of intoxication and the aggra-

vating circumstances surrounding the operation of the automobile. Nonetheless, we noted that "there also must be evidence of negligence that is a proximate cause of the accident." *Id.* at 363 n. 9, 539 A.2d at 1123 n. 9. It is a combination, then, of some negligent act and a specific level of intoxication which can give rise to a finding of a reckless disregard for human life. Cases around the country apparently require clear conduct, causally related to a state of intoxication. *See McKenna v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460, 467, 558 P.2d 1018, 1024 (1977) ("driving a car while under the influence of intoxicating liquor does not constitute actionable negligence ... unless there is a causal relationship between the intoxication and the accident"); *Landry v. United States Automobile Assn.*, 49 Wis.2d 150, 158, 181 N.W.2d 407, 412 (1970) ("[i]ntoxication itself does not give rise to liability but only does so when combined with some act of causal negligence").

Saba might rely on *Nast* if he could show that the punch thrown by Darling was a negligent act. This would place the instant case squarely within the *Nast* holding. Saba, however, at no time argued that the punch thrown by Darling was negligent, mistaken, or inadvertent. In any event, we do not believe that such an argument would be persuasive. The facts surrounding the confrontation between Saba and Darling make clear that Darling was not so intoxicated that he could not perform intentional acts. To the contrary, witnesses agree that Darling was able to walk and was about to get into a car without any assistance or apparent difficulty. Darling remembers the events of the evening, and his testimony did not differ significantly from the testimony of other witnesses. Given these circumstances, the evidence clearly demonstrated that Darling was able to form the conscious intent to punch Saba.

If we were to accept Saba's rationale, we would have to conclude that an intentional act, when coupled with intoxication, is sufficient to sustain a suit based on a theory of negligence. We believe that the intermediate appellate court went directly to the heart of the matter when it stated

that "the nexus between Darling's drinking and the battery upon Saba is too flimsy a thread to support an action of gross negligence." 72 Md.App. at 491, 531 A.2d at 698. As we see it, the act of drinking in public and the battery were two independent, intentional acts.

We examined Comment f to § 500 of the Restatement (Second) of Torts on a prior occasion and concluded that "[r]eckless, wanton or willful misconduct differs from intentional wrongdoing." *Johnson v. Mountaire Farms of Delmarva, Inc.,* 305 Md. 246, 253, 503 A.2d 708, 712 (1986). We noted that Comment f states that "[w]hile an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." Here, in order for Darling to be found reckless under this section, the harm Saba incurred would have to have had a strong probability of resulting from the act of becoming drunk, but not have been an intended consequence of the intoxication. We do not agree with Saba that there was a strong probability that a battery would result from Darling becoming intoxicated.

We hold, therefore, that the Court of Special Appeals was correct in concluding that Saba's injuries were the result of an intentional battery by Darling, and there was no liability for such injuries grounded in negligence stemming from Darling's intoxication.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY THE COSTS.