648 A.2d 1039

**Harry JANELSINS**

v.

**Stephen Paul BUTTON.**

**No. 1665, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Oct. 26, 1994.

---

Samuel F. Kenney, Towson, for appellant.

Vincent M. Wills (Edmund J. O'Meally and Blum, Yumkas, Mailman, Gutman & Denick, P.A., on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., WENNER, J., and ELLEN L. HOLLANDER, Judge, Specially Assigned.

ELLEN L. HOLLANDER, Judge, Specially Assigned.

Harry Janelsins, appellant, has appealed from a judgment entered against him in the Circuit Court for Baltimore County in a civil battery action instituted by Stephen Button, appellee. After a non-jury trial, the court awarded $15,750.00 in compensatory damages to Button, but denied his request for punitive damages.

Janelsins presents the following question for consideration: "Was the evidence presented to the Court legally sufficient to find that the Appellant committed a civil battery upon the Appellee?" He does not address that question in his appeal brief, however. Instead, he argues that Button either consented to the battery or assumed the risk of injury. Button has filed a cross-appeal from the trial court's refusal to award punitive damages. In all respects, we shall affirm.

On June 28, 1991, Janelsins was a patron of the Manor Tavern, where Button worked as a "bar back." [1] After Janelsins had consumed enough alcohol either to pass out or fall asleep at the bar, Mark Green, the owner of the Manor Tavern, instructed Button to help escort Janelsins to his car. Several patrons assisted in the process and agreed to drive Janelsins home. Before the group reached the vehicle, Janelsins walked, unassisted, to a nearby fence, urinated, and walked back to his car.

Although Janelsins admittedly had no memory of the events, it is apparent that he did not want anyone to force him into his car. Nor did he want anyone to drive it for him. When Button and the customers tried to push Janelsins into the back seat of his car, Janelsins resisted, shouting obscenities and threats. As Button attempted to put Janelsins's legs in the car, Janelsins kicked Button in the face. As a result, Button lost a tooth, and suit followed.[2]

At the conclusion of the trial, Janelsins moved for judgment. He argued that Button had assumed the risk of injury by attempting to force Janelsins into the car. Judge Barbara Kerr Howe disagreed and denied Janelsins's motion.[3] She concluded that Janelsins was liable for civil battery and rendered judgment in favor of Button.

*Discussion*

■ Preliminarily, relying on Maryland Rule 8–504(a)(4, 5) and *Monumental Life Ins. Co. v. U.S. Fidelity & Guarantee Co.*, 94 Md.App. 505, 544, 617 A.2d 1163, *cert. denied*, 330 Md. 319, 624 A.2d 491 (1993), Button argues that Janelsins's failure

---

1. According to Button's testimony, a "bar back" is a bartender's assistant; he is responsible for stocking alcoholic beverages and helping patrons who need cabs or escorts to their cars.

2. Janelsins did not counterclaim against Button based on Button's forcible attempts to put Janelsins into his car.

3. Button also sued Janelsins for negligence but, at the conclusion of the trial, the court granted Janelsins's motion for judgment with respect to that claim. Button has not challenged that decision in his cross-appeal.

to raise the issues of assumption of risk and consent in the Questions Presented section of his appeal brief constitutes waiver of those issues. We disagree.

In *Monumental,* the appellant failed entirely to include anywhere in the appeal brief an argument on certain issues, although the appellant referenced the argument as having been made elsewhere. Holding these omissions as a waiver, we declined to reach the merits of the issues. 94 Md.App. at 544, 617 A.2d 1163. Janelsins's actual Question Presented does not specifically mention consent or assumption of risk, but, in a generous reading of his brief, those issues appear in the argument section.[4] Moreover, the issue of assumption of risk was expressly raised at trial, and the issue of consent was implicitly raised. Accordingly, the issues of consent and assumption of risk have been preserved. *See Prince George's Co. Council v. Offen,* 334 Md. 499, 639 A.2d 1070 (1994).

*I. Insufficiency of Evidence Claim*

A battery is the "unpermitted application of trauma by one person upon the body of another person." *McQuiggan v. Boy Scouts of America,* 73 Md.App. 705, 714, 536 A.2d 137 (1988) (citation omitted). *Accord, Saba v. Darling,* 72 Md. App. 487, 491, 531 A.2d 696 (1987), *aff'd,* 320 Md. 45, 575 A.2d 1240 (1990). Accidental or inadvertent contact does not constitute battery. *Richard J. Gilbert & Paul T. Gilbert, Maryland Tort Law Handbook* § 3.1, at 29 (2d ed. 1992) (hereinafter, *"Gilbert"*). Rather, the tort of battery requires *intent* by the actor "to bring about a harmful or offensive contact.... [It is] confined to intentional invasions of the interests in freedom from harmful or offensive contact."[5] *Fowler V. Harper, et al.,* 1 *The Law of Torts* § 3.3, at 272–73, 276 (2d ed. 1986) (hereinafter, *"Harper"*). *See also, Ghassemieh v.*

---

4. Specifically, Janelsins argues that Button "manifested a willingness to take the risk of injury...."

5. Where an accident occurs, no battery has been committed because the actor would not have *intended* to invade the other's interest. *Harper, supra,* § 3.3, at 277.

*Schafer,* 52 Md.App. 31, 38, 447 A.2d 84, *cert. denied,* 294 Md. 543 (1982).

 Janelsins's insufficiency of the evidence argument must fail. The evidence, including Janelsins's threats and his flailing about, adequately supports a finding that he intended to strike Button. Although Janelsins apparently was inebriated at the time of the incident, his voluntary intoxication does not vitiate the intent element of battery. *State v. Hatfield,* 197 Md. 249, 253, 78 A.2d 754 (1951). *See also, Saba v. Darling,* 320 Md. 45, 575 A.2d 1240 (1990) (intoxicated defendant can still form intent to commit battery); 6A *C.J.S., Assault & Battery,* § 15, at 337 (1975); *cf. Hook v. State,* 315 Md. 25, 28–29, 553 A.2d 233 (1989) (voluntary drunkenness is not a defense to a general intent crime, including second-degree murder); *Smith v. Branscome,* 251 Md. 582, 592–96, 248 A.2d 455 (1968) (in a tort action, person who negligently or intentionally becomes intoxicated must be held to the same standard of conduct as a sober person); *Martin v. State,* 228 Md. 311, 316, 179 A.2d 865 (1961) (voluntary drunkenness does not preclude the formation of intent to kill, and generally is not a defense to a crime). Moreover, as we discuss below, to the extent that any defenses were available to Janelsins, the trial court properly found them inapplicable.

## II. Assumption Of Risk

Janelsins argues that Button assumed the risk of Janelsins's conduct, and is therefore barred from recovery. It is unclear whether Janelsins contends that assumption of risk is tantamount to consent or that the doctrine of assumption of risk applies to civil battery actions independent of the doctrine of consent. In either event, Janelsins does not succeed. We explain.

### A. Assumption Of Risk As Tantamount To Consent

To the extent that Janelsins argues that the evidence was insufficient to constitute battery based on Button's consent,

Janelsins cannot prevail; that issue was properly resolved by the trier of fact.

■ "All intended wrongs have in common the element that they are inflicted without the consent of the victim. Those who, with full knowledge, assent to the invasion of their interests may not complain." 1 *Harper, supra,* § 3.10, at 298. The general rule—that a person cannot recover damages where he has consented to the wrong—applies in civil battery actions. 6 *Am.Jur.2d Assault & Battery,* § 155, at 130–32 (1963 & Supp.1994). Therefore, a plaintiff's consent may be a complete defense in a battery action. *McQuiggan,* 73 Md. App. at 714, 536 A.2d 137 (consent, if established, negates the wrongful element of defendant's act). *See also,* 1 *Harper, supra,* § 3.10, at 298–309, and 4 *Harper,* § 22.5, at 297.

> The gist of the action is not [the defendant's] hostile intent but the absence of consent to the contact on plaintiff's part. *Ghassemieh,* 52 Md.App. at 38 [447 A.2d 84]. When a plaintiff "manifests a willingness that the defendant engage in conduct and the defendant acts in response to such a manifestation," [*Prosser & Keeton, supra* ], § 18, at 113, "his consent negatives the wrongful element of the defendant's act, and prevents the existence of a tort." *Id.* at 112.

*McQuiggan,* 73 Md.App. at 714, 536 A.2d 137. *See also, Gilbert, supra,* §§ 3.1 n. 10 (citing *McQuiggan* ) and 3.2, at 29–31; *Prosser & Keeton, supra,* § 18, at 112–13; 6A *C.J.S., Assault & Battery,* §§ 16–17, at 337–40; 6 *Am.Jur.2d, Assault & Battery,* §§ 155 and 157.

■ Consent occurs when a plaintiff "manifests a willingness that the defendant engage in conduct and the defendant acts in response to such a manifestation." *W. Page Keeton, et al., Prosser & Keeton on the Law of Torts,* § 18, at 113 (5th ed., 1984) (hereinafter, *"Prosser & Keeton"*). *Accord, Restatement (2d) Torts,* § 892(1), at 362 (consent is "willingness in fact for conduct to occur"). Consent may be inferred from words, actions, or inactions if reasonably understood by another to indicate consent, even if not expressly communicated to the actor. *Id.,* § 892. But consent "must be knowingly and

intelligently given, and not the result of fraud or incompetency...." 6A *C.J.S., Assault & Battery,* § 16. Where the plaintiff consented to the battery itself, the consent extends to ordinary consequences stemming from it. 1 *Harper, supra,* § 3.10, at 299; *see also, J.D. Lee & Barry Lindahl, Modern Tort Law: Liability & Litigation,* §§ 9.10–9.14 (1993); *Prosser & Keeton, supra,* § 18, at 114.

A split has developed among various jurisdictions as to whether the defense of consent is available to a defendant if the battery constitutes a crime or, as here, a breach of peace. 1 *Harper, supra,* § 3.10, at 306–08 & nn. 36–38 (collecting majority and minority cases). The majority rule holds that, when an assault or battery amounts to a breach of the peace, neither party may raise the other party's consent as a defense, because public policy against such breaches would be frustrated. *Id.* These courts are of the view that when the battery constitutes a breach of the peace, "the fact that the parties agreed to fight is no defense to an action for assault and battery, although such consent will probably materially reduce the measure of damages." *Gilbert,* § 3.2, at 31 (footnotes omitted).

Although some treatises support the majority rule, *see, e.g., Id.; Stuart M. Speiser, et al., The American Law of Torts,* § 26:10, at 895 (1986); 6A *C.J.S. Assault & Battery,* §§ 16–17, at 337–40; 6 *Am.Jur.2d Assault & Battery,* §§ 155 and 157 (1963 & Supp.1994), other authorities roundly criticize it in what we shall call the minority rule. *See, e.g.,* 1 *Harper, supra,* at 307; Frances H. Bohlen, *Consent As Affecting Civil Liability,* 24 *Colum.L.Rev.* 819 (1924); *Restatement (2d) Torts,* §§ 60, 892C; *cf., Id.,* § 496F (plaintiff's assumption of risk bars recovery even when defendant's conduct violates a general statute). Maryland has not yet expressly joined with either group, although at least one commentator believes that this State follows the majority. *Gilbert, supra,* § 3.2, at 31 (comparing *McQuiggan* with *Md.Ann.Code of 1957,* Art. 27, §§ 123(a) and 124 (1982)).

We need not decide here which view to adopt. Even if Maryland were to follow the minority rule, which permits the defense of consent if the battery constitutes a breach of peace, the issue of consent was necessarily resolved at trial. Lack of consent to the contact is, as we have noted, an essential component of the tort. *Gassemieh,* 52 Md.App. at 38, 447 A.2d 84; *see also, Prosser & Keeton, supra,* § 18, at 112 (quoting Justice Holmes in *Ford v. Ford,* 143 Mass. 577, 10 N.E. 474, 475 (1887)). The trial court expressly concluded that Janelsins committed a battery and, at least implicitly, found as a factual matter the absence of consent. As the finder of fact, it was Judge Howe's responsibility to weigh the credibility of the witnesses. *U.S. Money v. Kinnamon,* 326 Md. 141, 149–51, 604 A.2d 64 (1992). Her decision was not clearly erroneous.

### B. Assumption Of Risk

Janelsins seemingly argues that the doctrine of assumption of risk—as distinguished from consent—bars recovery in this case for the tort of battery. As the Court observed in *Schroyer v. McNeal,* 323 Md. 275, 284, 592 A.2d 1119 (1991), the doctrine of assumption of risk, while well settled, is nonetheless difficult to apply. No Maryland case has addressed the issue of whether the doctrine is applicable to a civil battery action. We hold that it is not a viable defense in an action for civil battery.

In general, a plaintiff may be legally found to have assumed the risk of injury created by the reckless or negligent conduct of a defendant when, with full knowledge and appreciation of a risk, the plaintiff freely and voluntarily encounters the danger. *Prosser & Keeton, supra,* § 68, at 486–87; *Restatement (2d) Torts,* § 496A.[6]

---

**6.** Assumption of risk encompasses several forms of conduct, including express assumption, implied assumption based on the relationship of the parties, implied assumption based on plaintiff's voluntary determination to encounter a danger already created by the defendant, and implied assumption constituting contributory negligence (*i.e.,* voluntari-

According to the Restatement, the distinctions between the doctrines of assumption of risk and consent are only semantic.

> The defense whose general principle is stated in this Section is given the name, in most jurisdictions, of "assumption of risk." A few courts ... have applied the same principle to other situations under the ancient maxim, "*Volenti non fit injuria*," which signifies that no wrong is done to one who consents. The distinction is, however, one without a difference, of terminology only, and the rules applied are the same in either case.

*Restatement (2d) Torts*, § 496A, comment b, at 560–61. The Restatement also notes that assumption of risk has often been explained in terms of consent:

> In its simplest form, assumption of the risk means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk.

*Id.*, comment c, at 561. In the comments to the definition of "consent," the *Restatement* observes, further, as follows:

> "Consent" is used throughout with reference to conduct on the part of the actor that is *intended* to invade the interests of the one who consents. Consent to conduct that is *merely negligent*, creating an unreasonable risk of harm, is commonly called "assumption of risk."

*Id.*, § 892(1), at 362, Comment a (emphasis added). *Prosser & Keeton* is in accord with this view.

> In its most basic sense, assumption of risk means that the plaintiff, in advance, has given his *express* consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone. The situation is then <u>the same as where the plaintiff consents to the</u>

---

ly and knowingly encountering a risk that a reasonable person would not, such as running into a burning building to rescue a hat). *Restatement (2d) Torts*, § 496B, comment a, and § 496C, comments c, d, f.

> infliction of what would otherwise be an intentional tort, except that the consent is to run the risk of unintended injury, to take a chance, rather than to accept the greater certainty of intended harm.

*Prosser & Keeton, supra,* § 68, at 480–81 (italics in original, underlining added; footnotes omitted).

It is clear that the defenses of consent and assumption of risk involve two common elements—cognizance of a danger and volition in encountering it. Therefore, the two doctrines substantively amount to flip sides of a single conceptual principle. *See, e.g.,* 1 *Harper, supra,* § 3.10, at 299–300 (players *consent* to contact in violent sports), and § 21.5, at 238–41 (players *assume the risk* that contact will occur in violent sports).[7] To the extent the two theories are distinguishable, it appears that assumption of risk is applied more frequently in negligence actions while consent is more typically applied in intentional tort actions. "[C]onsent [arises] in relation to intentional interferences with person or property. A similar but different question relates to the ... defense of ... assumption of the risk to otherwise actionable, accidental invasions giving rise to negligence...." *Prosser & Keeton, supra,* § 18, at 112. Consequently, it is clear that Janelsins has no better argument under assumption of risk than he does under consent.

Other jurisdictions that have considered the issue of assumption of risk as a defense to an intentional tort have overwhelmingly rejected its applicability. *See, e.g., Blankinship v. Duarte,* 137 Ariz. 217, 669 P.2d 994, 999 (App.1983) (assumption of the risk is no defense to battery); *Knight v. Jewett,* 275 Cal.Rptr. 292, 297 (Ct.App.1990) ("We agree it would be error to apply assumption of the risk, a negligence doctrine, to assault and battery, which is an intentional tort."

---

7. Certainly, one could argue that the doctrines of consent and assumption of risk are conceptually different: A plaintiff could "assume the risk" of an occurrence without consenting to it. As an example, a homeowner who leaves the front door unlocked for a few minutes to chase an errant child may knowingly and voluntarily encounter a risk of daytime housebreaking, but does not consent to it.

(citation omitted)), *aff'd*, 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (Sup.Ct.1992); *Navarre v. Ostdiek*, 518 P.2d 1362, 1363 (Colo.App.1973) (assumption of risk does not apply to assault and battery); *Harvey Freeman & Sons, Inc. v. Stanley*, 259 Ga. 233, 378 S.E.2d 857, 859 (1989) (assumption of risk statute applies only to negligence, not intentional acts); *Hendricks v. Southern Bell Tel. & Tel.*, 193 Ga.App. 264, 387 S.E.2d 593, 595 (1989) (same); *Marek v. Stepkowski*, 241 Ill.App.3d 862, 181 Ill.Dec. 212, 216, 608 N.E.2d 285, 289 (1993) (while assumption of risk may reduce recovery in a battery action, it does not bar it); *Downing v. United Auto Racing Ass'n*, 211 Ill.App.3d 877, 156 Ill.Dec. 352, 361, 570 N.E.2d 828, 837 (1991), *cert. denied*, 141 Ill.2d 538, 162 Ill.Dec. 485, 580 N.E.2d 111 (1991) (public policy against willful and wanton conduct dictates that a plaintiff cannot absolve a defendant of liability for such acts by assuming the risk that they will occur); *Johnson v. Hardnett*, 62 Ohio App.2d 165, 405 N.E.2d 324, 326 (1978) (error to apply assumption of risk to assault); *Korzun v. Shahan*, 151 W.Va. 243, 151 S.E.2d 287, 293 (1966) (assumption of risk is not available when defendant's misconduct is intentional, willful, and wanton; "[negligence] conveys the idea of heedlessness, inattention or inadvertence, while [willful and wanton misconduct] connotes purpose or design, actual or constructive." (citations omitted)). *But see, Burrows v. Hawaiian Trust Co., Ltd.*, 49 Haw. 351, 417 P.2d 816, 821–22 (1966) (nurse tending insane patient could assume the risk that patient might strike her).

These cases plainly establish that the doctrine of assumption of risk does not bar recovery for intentional torts. In particular, the comment in *Ordway v. Superior Court*, 198 Cal.App.3d 98, 243 Cal.Rptr. 536 (Cal.App.1988), is instructive. The court said:

Historically, the doctrine of assumption of risk has provided a defense only to actions for *negligence. It has little or no application in the case of intentional or reckless conduct.* The reason is this: While a potential plaintiff who engages in dangerous activity is "held to have consented to the injury-causing events which are known, apparent or

reasonably foreseeable consequences of the participation ... participants do not consent to acts [by others] which are reckless or intentional."

*Id.*, at 108, 243 Cal.Rptr. at 542 (emphasis added; citation and footnote omitted).

The defenses of assumption of risk and contributory negligence are closely related and frequently overlap. *Schroyer v. McNeal*, 323 Md. 275, 280, 592 A.2d 1119 (1991). Accordingly, analysis of the defense of contributory negligence in a battery case may also provide some guidance.

Several torts treatises are in accord with the view that the defense of contributory negligence is inapplicable to an intentional tort. For example, *Harper*, observes:

Intentional wrongdoing is so much graver a wrong than negligence both in its social consequences and in the amount of resentment it arouses that the felt need both to deter and to punish it outweighs any social benefits that are thought to accrue from the rule of contributory negligence.

4 *Harper, supra*, § 22.5, at 294. Similarly, *Prosser & Keeton* rejects the availability of the defense of contributory negligence in a battery action. "[W]here the defendant's conduct is actually intended to inflict harm ... the defense [of contributory negligence] never has been extended to such intentional torts." *Prosser & Keeton supra*, § 65, at 462. The *Restatement (2d) of Torts* states that "[t]he plaintiff's contributory negligence does not bar recovery against a defendant for a harm caused by conduct of the defendant which is wrongful because it is intended to cause harm to some legally protected interest of the plaintiff or a third person." *Id.*, § 481.

Reviewing these positions, *Stuart M. Speiser, et al., The American Law of Torts* (1986), goes one step further:

It follows that since the plaintiff is not barred from recovery against an intentional wrongdoer by his contributory negligence, he is not barred from recovery by his failure to be attentive to his surroundings so as to discover the aggressive act of the defendant and thereafter avoid its consequences. He is not barred by his failure to exercise

reasonable care when the aggressive act and the danger involved in it is discovered by him. *He is not barred merely by the fact that, knowing that the defendant intends to act aggressively, he does not so act as to deprive the defendant of the opportunity of carrying out his purpose.*

As pointed out by one of the leading textwriters [*Harper, supra* ], intentional wrongdoing differs from negligence in the social condemnation attached to it and the amount of resentment it arouses.

*Id.,* § 12:9, at 535–36 (emphasis added; footnotes and citations omitted). *See also, Restatement (2d) Torts,* § 481, comment b, at 537 (language similar to the emphasized portion).

In *Saba v. Darling,* 72 Md.App. 487, 531 A.2d 696 (1987), *aff'd,* 320 Md. 45, 575 A.2d 1240 (1990), this Court considered the applicability of contributory negligence in a civil battery action. The defendant, who had been drinking, struck the plaintiff in the jaw. Prior to trial, the plaintiff elected to proceed only on a negligence theory, rather than assault and battery. On appeal, plaintiff complained that the trial court erred in failing to instruct the jury that contributory negligence would not bar plaintiff's recovery in an action predicated on gross negligence. Noting that plaintiff's case arose from an assault and battery—an intentional act—the Court reasoned that contributory negligence was inapplicable. "There was no evidence of negligence in this case, so that whether there was contributory negligence on the part of [plaintiff] matters not one whit." 72 Md.App. at 492, 531 A.2d 696. *See also, Tucker v. State, Use of Johnson,* 89 Md. 471, 486, 44 A. 1004 (1899) (the authorities discussed "agree that the doctrine of contributory negligence can have no application when the action is founded on intentional violence.").

 Because of the legitimate public policy of deterring and punishing intentional wrongdoing, the fact that a plaintiff "assumed the risk" that such wrongdoing would occur cannot bar recovery for the wrongs perpetrated. Although Button certainly knew that Janelsins was intoxicated and, after Janelsins began to resist forcibly, nevertheless continued to push

Janelsins into his car, Button did not assume the risk of battery.

### III. Punitive Damages

 In contrast to Janelsins's appeal, Button's cross-appeal is readily resolved. In an Amended Opinion and Order, in which an implied malice standard was applied,[8] as requested by Button, the trial court nevertheless declined to award punitive damages. We see no error. The trier of fact has the discretion to deny punitive damages even where the record otherwise would support such an award. *Adams v. Coates,* 331 Md. 1, 15, 626 A.2d 36 (1993).

JUDGMENT AFFIRMED. COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY APPELLEE.

---

8. This Court recently approved applying the implied malice standard to punitive damage liability in intentional tort cases. *Montgomery Ward Stores v. Wilson,* 101 Md.App. 535, 647 A.2d 1218 (1994).