## EDITH BLANCHE STEINMAN *vs.* THE BALTIMORE ANTISEPTIC STEAM LAUNDRY COMPANY.

*Assault and Battery—Insufficient Evidence—Master Not Liable for Assault by Servant Not Acting Within Scope of Employment—Ratification.*

The evidence is insufficient to support an action of assault and battery when it is merely to the effect that an employee of the defendant, a laundry company, called at the plaintiff's house and, in spite of plaintiff's protest, took certain blankets from a chair on which they were lying, and that, in so doing, his knee accidentally came in contact with plaintiff's knee.

When the rules of a laundry company provide that its drivers shall collect the money due for goods upon delivery of the same, and that if goods are delivered without payment, they shall be responsible therefor to the company, a driver who delivers goods without payment, and subsequently calls to collect the money due therefor, is not acting within the scope of his employment, and the company is not liable for an assault then committed by him.

When the driver commits an assault under such circumstances, the laundry company is not to be held to have ratified his act merely because it offered to return the goods then taken by him.

A principal does not ratify an assault committed by his agent, not within the scope of the agent's employment, except by some act done with knowledge of the material facts.

*Decided December 4th, 1908.*

Appeal from the Baltimore City Court (SHARP, J.)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Arthur L. Jackson,* for the appellant.

*W. Stuart Symington, Jr.* (with whom was *Henry H. Dinneen* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action of tresspass *vi et armis* by the appellant against the appellee for an alleged assault and battery committed by an agent and servant of the defendant corporation in the regular course of his employment by the defendant. The defendant is a laundry company, duly incorporated.

The plaintiff, who is a married woman, to prove her case, produced only two witnesses. Her first witness was G. E. Saffran, who testified that he was route superintendent of defendant at the time of the alleged assault, and that he was required in the discharge of his duty to adjust disputes about the work done by the laundry company; the non-delivery, or misdelivery, of laundered goods, and complaints made to the laundry company, or claims presented against the company. On cross-examination he said he was authorized to compromise or settle claims under fifty cents, but for any claim over that amount he was obliged to obtain the authority of the manager of the company. He also said he was authorized to collect money due the company; that when the wagon drivers deliver work without getting the money, they do so at their own risk, and that in such case he is authorized to compromise the claim under fifty cents, but that he has no authority to arrest persons against whom the company has claims for work done. He also stated that when a driver is sick or discharged, he takes his wagon at the laundry, and that when he went to Mrs. Steinman's house on the day of the alleged assault, he went *of his own accord, to collect his own*

*money.* The plaintiff, Mrs. Steinman, was the only other witness. She testified that Saffran came to her house on the day of the alleged assault and said, "Let me see the blankets that were left here;" that she brought the blankets and said, "Are they the wrong blankets?" and he said, "No, they are the right blankets, and I am going to take them with me." That she said, "No, you are not," and he put his hands on the blankets," and she said, "No, you are not," and put her hands on them. That he then said, "There is a police across the street, and if you don't take your hands off the blankets, I will call him and have the policeman arrest you." She says she thought he had a policeman with him and she turned and looked, and when she turned he took the blankets and went out, and then came back and said, "Don't tell your husband I frightened you to death," "and then I knew nothing else." She was then asked if he touched her at all, and she replied, "With his knee against my knee;" that she was sitting on a chair and the blankets were on a seat beside her; that she was then about four months advanced in pregnancy; that when his knee touched hers it caused no pain. She then offered to prove by herself that after the facts above stated she fainted, and when she revived found she had suffered a uterine hemorrhage, and further offered to prove by a practicing physician of twenty years' standing that he was her physician and knew she was then about four months advanced in pregnancy, and that the uterine hemorrhage testified to by her was a natural result of the nervous shock and fright caused by the conduct of Saffran as described by her.

She also offered to prove that her husband, about three weeks after this occurrence, received a letter from Messrs. Yellott & Symington, attorneys for the laundry company, asking him to call at the laundry for "his two blankets," which he could have on payment of one dollar, the charge for washing them, or they would be sent him on payment of that amount. All this offer of testimony was objected to, and to its exclusion the first exception was taken.

The defendant then offered two prayers withdrawing the case from the jury, both of which were granted. The first of these prayers asserted there was no legally sufficient evidence to entitle the plaintiff to recover, and the second, that there was no legally sufficient evidence that the alleged assault was committed by the witness, Saffran, within the scope of his employment by the defendant.

The declaration is unusually brief, merely alleging that "the defendant, by its agent and servant, in the regular course of employment, assaulted and beat the plaintiff in the City of Baltimore on May 25th, 1906. And the plaintiff claims $5,000 damages." But the averments are ample to warrant recovery, if sustained by legally sufficient evidence. It was necessary to prove, first, that an assault was committed by defendant's servant, and, second, that it was committed in the course of his employment. It would not be sufficient to show that a wrong was committed in taking the blankets from the premises and possession of the plaintiff.

The exclusion of the testimony offered and the ruling upon the prayers involve but one question and may be considered together. If the proffered testimony was legally sufficient as tending to show an actual assault by Saffran, and that it was committed in the course of his employment, or that it was approved and ratified by the defendant, it should have been admitted. If it did not, it was properly excluded, and the same principles are applicable to the prayers offered.

The only evidence that Saffran touched the plaintiff's person at all was her evidence, that when he took the blankets from the chair upon which they were lying, and which was beside the chair in which she was seated, that his knee came in contact with her knee, causing her, as she says, no pain. There is no evidence whatever of any threat of violence or any attempt to use force, or of any gesture indicating such purpose. It would not be possible, if his knee had not touched hers, that an action for assault alone could be maintained, and to warrant a recovery the evidence must establish a battery. The weight of authority is decided, that the mere

touching of one's person by another, unless wilfully or in anger, or in a contemptuous or insolent manner, does not constitute a battery, but it is unnecessary to review these authorities. There is no pretense here that this contact of his knee with hers was wilful, angry or insolent, and the only inference from her testimony is that it was purely accidental, as in the case of one stumbling, and in his fall coming in contact with the person of another.

But the plaintiff, nevertheless, contends that as she claims to have had her hands resting on the blankets when Saffran took them from the chair, that he was guilty of technical assault, and to sustain this contention she relies upon the case of *Dyk* v. *DeYoung,* 35 Ill. App. 138. In that case the defendant attempted to snatch from the hands of a married woman, then pregnant, a receipt which she held. In the struggle the paper was torn, and she testified that the defendant, as he grasped for the receipt, struck her in the abdomen. The Court held that this was a technical assault. It is true that "anything attached to the person partakes of its inviolability," as stated in *Selwyn's Nisi Prius,* 27, and there is no occasion to criticise the Illinois case above, its facts bringing it within that rule. But the present case is quite different. Here it is clear that instead of using violence, the defendant resorted to a ruse to obtain the blankets. He told her, "I will call that police and have you arrested." She says, "I looked, and there was a policeman across the street, and when I looked he took the blankets and went out, and then he came back and said, 'Don't tell your husband I frightened you to death.'" The latter part of this statement is somewhat difficult to understand, but its truth or accuracy plays no part in the questions we are considering.

After a careful consideration of the facts of this case we cannot agree that it measures up to the Illinois case, nor to the cases cited therein, and we are of opinion that there was no error in excluding the evidence offered, nor in granting the defendant's first prayer. But if an assault were made out, we think it is clear from the evidence that Saffran was not

acting within the scope of his employment, and that there was no ratification of his action by the defendant. He was called as a witness by the plaintiff, and his undisputed testimony was that when a driver leaves laundered goods with a customer without getting the money for the work, he is responsible for the money to the company, and that he went there "of his own accord *to get his own money."* This branch of the case is well illustrated in *McDermott* v. *Brewing Co.,* 105 La. 124. In that case a driver of the defendant delivered beer to a customer, upon a sale for cash which he was required to collect on delivery or be charged personally with the amount. He failed to collect at the time of delivery, and when he subsequently called for that purpose he got into an altercation with one of the customer's servants over the matter, and assaulted him and took back the unused beer to his employers. In a suit against the company for this assault, it was held not liable. The Court said, "The act of this driver was not in furtherance of the company's business nor in the protection of its interests. The defendant had not sent him to collect, nor was it interested in recovering losses by pursuing the violent methods which it pleased the driver to pursue. * * * He thereby sought to protect his own interests. * * * His employer had made provision to protect itself in case of the driver's failure to collect. * * * By the effect of the agreement between the defendant and the driver, it had become the latter's business." This language is as sensible as it is just. *Quoad* that transaction, the relation of master and servant had no existence. The same view was expressed in *Feneran* v. *Singer Co.,* 20 N. Y. App. Div. 574.

There was no evidence of ratification of Saffran's act by defendant. Ratification requires proof of full knowledge of all material facts, and upon this point the record is absolutely silent. There is not a word to show that the defendant knew the blankets had ever been delivered to the plaintiff, or that any assault had been committed or even charged. The letter of Messrs. Yellott & Symington throws no light upon this question. It is simply a notice to call at the laundry, pay

the charges and take away the blankets, and it is nothing more.    Such a notice is a natural and proper mode of calling attention to the debt and getting rid of completed work.    It would require a reckless stretch of imagination to deduce from such a notice knowledge by defendants of the alleged assault, with all its circumstances, and a purpose to approve and ratify it.

For these reasons we are of opinion the defendant's second prayer was properly granted, and the judgment will be affirmed.

> *Judgment affirmed with costs to the appellee above and below.*