735 A.2d 1096

Charles A. NELSON

v.

Albert CARROLL.

No. 137, Sept. Term, 1998.

Court of Appeals of Maryland.

Aug. 26, 1999.

594

John A. Austin, Towson, for petitioner.

No argument on behalf of respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

CHASANOW, Judge.

This case requires that we determine the extent to which a claim of accident may provide a defense to a civil action for battery arising out of a gunshot wound. Charles A. Nelson, the plaintiff in this case and the petitioner here, asserts that the trial court should have held Albert Carroll, the defendant and respondent, liable for the tort of battery as a matter of law, sending to the jury only the issue of damages. We agree with Nelson that a claim of "accident" provides no defense to a battery claim where the evidence is undisputed that Nelson was shot by Carroll as Carroll threatened and struck him on the side of his head with the handgun.

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to the Constitution of Maryland, Article IV, § 3A, he participated in the decision and adoption of this opinion.

## I.

This is the second time this case has been before us. In our earlier decision, we addressed the Court of Special Appeals' conclusion that Nelson had failed to preserve his motion for judgment under Maryland Rule 8–131(a) because he had not stated with particularity all the reasons why the motion should be granted. *See* Md. Rule 2–519(a). We reversed, holding that Nelson had properly raised his reasons for seeking a motion for judgment. *See Nelson v. Carroll,* 350 Md. 247, 711 A.2d 228 (1998).

We summarized the essential facts of this case in our earlier decision:

"Carroll shot Nelson in the stomach in the course of an altercation over a debt owed to Carroll by Nelson. The shooting occurred on the evening of July 25, 1992, in a private nightclub in Baltimore City that Nelson was patronizing. Carroll, who was described as being a 'little tipsy,' entered the club and demanded repayment by Nelson of the $3,800 balance of an $8,000 loan that Carroll had made to Nelson. Nelson immediately offered to make a payment on account but that was unsatisfactory to Carroll. At some point Carroll produced a handgun from his jacket.

Carroll did not testify. There were only two witnesses who described how the shooting came about, Nelson and Prestley Dukes (Dukes), a witness called by Carroll. Dukes testified that when Nelson did not give Carroll his money Carroll hit Nelson on the side of the head with the handgun and that, when Nelson did not 'respond,' Carroll 'went to hit him again, and when [Carroll] drawed back, the gun went off.' Nelson, in substance, testified that he tendered $2,300 to Carroll, that Carroll pulled out his pistol and said that he wanted all of his money, and that the next thing that Nelson knew, he heard a shot and saw that he was bleeding."

*Nelson,* 350 Md. at 249, 711 A.2d at 229.

Carroll never testified. Because Prestley Dukes' testimony was the only evidence supporting Carroll's argument that his

shooting of Nelson was an accident, we quote the relevant parts:

> "[Carroll's attorney]: [T]ell me what happened [when Carroll entered the nightclub]?
>
> [Dukes]: Well, when [Carroll] came in, he walked up and told [Nelson], asked him to give him his money.  He didn't give it to him, so he hit him.

* * *

> [Carroll's attorney]: Okay. Now, did [Carroll] have the gun out when he came into the club?
>
> [Dukes]: Yes.
>
> [Carroll's attorney]: Okay. And you say he hit him on the side of the head?
>
> [Dukes]: Yeah.
>
> [Carroll's attorney]: All right, and said, give me my money?
>
> [Dukes]: Yeah.
>
> [Carroll's attorney]: All right.  And what happened then?
>
> [Dukes]: Well. He didn't respond to that.

* * *

> [Carroll's attorney]: Okay. [Nelson] didn't respond to it at all?
>
> [Dukes]: No. He said, 'didn't you hear[ ] me;  give me my money.'
>
> [Carroll's attorney]: Okay.
>
> [Dukes]: And went to hit him again, and when he drawed back, the gun went off."

On cross-examination, Dukes further testified:

> "[Nelson's attorney]: How much had Mr. Carroll had to drink that evening?
>
> [Dukes]: He had a little.
>
> [Nelson's attorney]: He was drunk at that time, wasn't he?
>
> [Dukes]: He was a little tipsy.
>
> [Nelson's attorney]: And he was angry, too, wasn't he?

[Dukes]: I imagine he was. He hit him aside the head with that gun.

[Nelson's attorney]: All right. He was angry from the time he saw him, wasn't he? Is that correct?

[Dukes]: Yes.

\* \* \*

[Nelson's attorney]: Okay. And when he walked over to Mr. Nelson ... and asked him for his money, did he have the gun out at that point?

[Dukes]: Yes.

[Nelson's attorney]: Had the gun out right from the beginning?

[Dukes]: Yes.

\* \* \*

[Nelson's attorney]: Okay. And was there anybody else around him?

\* \* \*

[Dukes]: It's a crowd in there.

\* \* \*

[Nelson's attorney]: And what hand did Mr. Carroll have the gun in? \* \* \*

\* \* \*

Had it in his left hand; hit him on the left side?

[Dukes]: Yeah.

[Nelson's attorney]: Okay. And then the gun went off?

[Dukes]: Not then. No.

[Nelson's attorney]: Then he pulled back, and squeezed the trigger and the gun went off?

[Dukes]: Then he asked him, said, give me my money again, and he went to hit him again, and then it went off.

[Nelson's attorney]: All right. . . ."

Nelson testified to undergoing extensive medical treatment resulting from his gunshot wound. Immediately after being shot, Nelson lost consciousness as a result of blood loss and did not fully regain consciousness for three or four months, until November 1992. He continued to spend months in various hospitals and rehabilitation facilities, undergoing multiple operations. He testified to the nearly complete loss of his eyesight.

Carroll was subsequently arrested and charged with shooting Nelson. Carroll pled guilty to assault and illegal possession of a handgun, was convicted, and was serving a seven-year sentence at the time of the civil trial.[1]

## II.

### A.

Nelson's sole contention before this Court is that he was entitled to a motion for judgment on the issue of liability for battery. He contends that the evidence that Carroll committed a battery is uncontested. Specifically, Nelson asserts that Carroll's primary defense on the issue of liability—that the discharge of the handgun was accidental—is unavailable under the circumstances of this case.

Preliminarily, it should be emphasized that the only defense raised by Carroll as to liability was that the actual shooting of the handgun was accidental. No evidence was produced to contest the other evidence relating to the course of events leading to the shooting. Carroll does not dispute the testimony that he was at the nightclub the night Nelson was shot, that he openly carried the handgun and confronted Nelson

---

1. Because we decide in favor of Nelson's petition on other grounds, we do not address Nelson's contention that, because of Carroll's assault conviction, collateral estoppel bars Carroll from denying liability for Nelson's battery claim.

about a debt owed him, and that, out of anger, he struck Nelson with the handgun on the side of Nelson's head at least once. Nor did Carroll present any evidence that would conflict with the testimony that Carroll was responsible for firing the shot that struck Nelson. The only point made in Carroll's defense (and which apparently the jury believed) was that the actual gunshot occurred accidentally. Carroll's counsel specifically conceded in his closing argument that Carroll "shouldn't have gone in there with a gun. He was wrong. But what he intended to do was to scare him."

A motion for judgment may be made at the close of evidence offered by an opposing party or after all the evidence has been presented. *See* Md. Rule 2–519(a). In considering a motion for judgment in a jury trial, "the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made." Md. Rule 2–519(b). Our task, therefore, is to determine whether, considering the essential elements of a tort claim for battery, there is any dispute over material facts from which a jury could conclude that Carroll had not committed a battery when he shot Nelson. Since the only disputed fact relates to whether Carroll shot Nelson accidentally as he was striking him, we need only address the narrow question of whether, under the facts of this case, the defense that the shot was fired accidentally is capable of exonerating Carroll of liability.

### B.

A battery occurs when one intends a harmful or offensive contact with another without that person's consent. *See* RESTATEMENT (SECOND) OF TORTS § 13 & cmt. d (1965). "The act in question must be some positive or affirmative action on the part of the defendant." *Saba v. Darling*, 320 Md. 45, 49, 575 A.2d 1240, 1242 (1990). *See also* PROSSER & KEETON, THE LAW OF TORTS § 9, at 39 (5th ed.1984). A battery may occur through a defendant's direct or indirect contact with the plaintiff. In this case, Carroll unquestionably committed a battery when he struck Nelson on the side of his

head with his handgun. *See Saba,* 320 Md. at 49, 575 A.2d at 1242 (observing that defendant's striking of plaintiff in the face, causing injury to his jaw, was "the *sine qua non* of an intentional tort"). Likewise, an indirect contact, such as occurs when a bullet strikes a victim, may constitute a battery. "[I]t is enough that the defendant sets a force in motion which ultimately produces the result...." PROSSER & KEETON, THE LAW OF TORTS § 9, at 40 (5th ed.1984). Thus, if we assume the element of intent was present, Carroll also committed a battery when he discharged his handgun, striking Nelson with a bullet.

Nelson's action in the instant case focuses on the indirect contact of the bullet and not the battery that occurred when Carroll struck him on the head. It is the bullet that allegedly caused the harm for which Nelson seeks damages. As the analysis that follows suggests, however, the circumstances surrounding the gunshot are relevant in determining whether a battery occurred.

## C.

█ Carroll's defense that he accidentally discharged the handgun requires us to examine the "intent" requirement for the tort of battery. It is universally understood that some form of intent is required for battery. *See* RESTATEMENT (SECOND) OF TORTS § 13 (1965)("An actor is subject to liability to another for battery if ... he acts *intending* to cause a harmful or offensive contact...." (Emphasis added)); PROSSER & KEETON, THE LAW OF TORTS § 9, at 39 (5th ed. 1984)(Battery requires "an act *intended* to cause the plaintiff ... to suffer such a contact...." (Emphasis added)); HARPER, JAMES & GRAY, THE LAW OF TORTS § 3.3, at 3:9 (3d ed. 1996)("[T]o constitute a battery, the actor must have *intended* to bring about a harmful or offensive contact or to put the other party in apprehension thereof." (Emphasis added)(footnote omitted)). It is also clear, however, that the intent required is not a specific intent to cause the type of harm that

occurred:[2]

> "The defendant's liability for the resulting harm extends, as in most other cases of intentional torts, to consequences which the defendant did not intend, and could not reasonably have foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim." (Footnote omitted).

PROSSER & KEETON, THE LAW OF TORTS § 9, at 40 (5th ed.1984).[3]

■ On the other hand, a purely accidental touching, or one caused by mere inadvertence, is not enough to establish the intent requirement for battery. *See, e.g., Steinman v. Laundry Co.,* 109 Md. 62, 66, 71 A. 517, 518 (1908)(finding a lack of intent for battery where "[t]here [was] no pretense here that this contact of his knee with hers was wilful, angry or insolent, *and the only inference from her testimony is that it was purely accidental,* as in the case of one stumbling, and, in his fall coming in contact with the person of another." (Emphasis added)).

■ The intent element of battery requires not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being through a harmful or offensive contact or an apprehension of

---

2. The trial court's jury instruction on intent erroneously instructed the jury that battery is a "specific intent" tort. The jury was instructed that "[f]or the offense of battery, the plaintiff must prove that the defendant acted with the specific intent to shoot the plaintiff." As the authorities cited in the main text make abundantly clear, the intent required is not a specific intent to cause the harm that occurred. That specific intent is not required for a battery is made evident by the universal recognition that voluntary intoxication does not provide a defense to battery. *See, e.g., Janelsins v. Button,* 102 Md.App. 30, 36, 648 A.2d 1039, 1042 (1994) ("Although Janelsins apparently was inebriated at the time of the incident, his voluntary intoxication does not vitiate the intent element of battery.").

3. *See also* PROSSER & KEETON, THE LAW OF TORTS § 8, at 36 (5th ed. 1984)("The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." (Footnote omitted)).

such a contact. As Professors Harper, James, and Gray observe in their treatise, the intent element of battery must be carefully analyzed:

"It has been seen that to constitute a battery a defendant's conduct must be characterized by the factor of intent. But it is necessary to analyze the mental element more carefully. All that is necessary is (a) that the actor engage in volitional activity and (b) that he intend to violate the legally protected interest of another in his person. * * * Since it is the invasion of another's interest that is intended, the actor takes the risk of the existence of a legal privilege to make it; it is no defense that the mistake is reasonable and due to no fault or negligence on the part of the actor. As in other cases of mistake, the actor must bear the losses incident thereto."

HARPER, JAMES & GRAY, THE LAW OF TORTS § 3.3, at 3:13–14 (3d ed.1996).

Thus, innocent conduct that accidentally or inadvertently results in a harmful or offensive contact with another will not give rise to liability, but one will be liable for such contact if it comes about as a result of the actor's volitional conduct where there is an intent to invade the other person's legally protected interests.

Even though intent is a subjective element usually left for the jury's determination, there are circumstances under which the law will imply the intent element of an intentional tort or a crime. One such example in a battery case is found in *Norman v. Insurance Co. of North America,* 218 Va. 718, 239 S.E.2d 902 (1978). Under facts less favorable to the plaintiff than those of the instant case, the Virginia Supreme Court addressed a trial court's ruling that an assault and battery occurred as a matter of law, despite the defendant's contention that the shooting was an accident. Clark S. Norman, Jr., the owner of an apartment building, was removing the property of a tenant when he got into an argument with the tenant and her brother, Ronald Wilson. During the course of the argument, Norman shot Wilson. At the subsequent civil trial for

assault and battery brought by Wilson, Norman alleged that the shooting was accidental. He contended that, believing he was going to be attacked, he "fired his pistol at the floor without removing it from his pocket and without aiming it at anyone; and that the bullet, however, ricocheted from the floor and hit Ronald Wilson." *Norman*, 239 S.E.2d at 903 (internal quotations omitted). The trial court instructed only as to self-defense, directing the jury that the owner's "inflict[ion of] a gunshot wound upon the plaintiff . . . constitutes an . . . assault and battery upon him." *Norman*, 239 S.E.2d at 904. In subsequent litigation between Norman and his insurer, the Virginia Supreme Court rejected Norman's complaint that the jury was not given the opportunity to find that "his wounding of Wilson was unexpected and accidental and that 'the jury never considered whether [Norman] intended or expected to injure Wilson. . . .' " *Id.* That court said:

"The intentional assault and battery of Wilson by Norman cannot be converted into an accident by a mere statement from the person making the assault that he did not intend the act or its consequences. [Norman] will not be permitted to say that an intentional and malicious firing of a pistol at another, resulting in an injury, was neither expected nor intended."

*Norman*, 239 S.E.2d at 905.

In order to decide this case, our holding need not reach as far as the Virginia Supreme Court's ruling in *Norman*. In *Norman*, the defendant claimed to have never removed the gun from his pocket, and he never struck a blow at the plaintiff; in the instant case, the unchallenged evidence shows that Carroll entered the bar openly carrying the gun, which he then used to strike Nelson, and then the shot occurred as he went to strike him again. If the law infers the necessary intent for battery in *Norman*, *a fortiori* the intent should be inferred in the instant case.

█ The only reasonable inference that can be drawn from the circumstances of this shooting, which in essence are uncontested, is that Carroll's actions evidenced an intent to

commit a battery. Carroll presented no evidence disputing the fact that he carried a loaded handgun and that he struck Nelson on the head with the gun. The merely speculative evidence upon which Carroll claims the shot was an accident was Dukes' testimony that when Carroll "went to hit him again ... the gun went off." In contrast, the evidence is undisputed that Carroll possessed a handgun which he openly carried into the nightclub, that Carroll struck Nelson with the handgun, and that the handgun discharged simultaneously as Carroll went to strike Nelson again. Indeed, taking every possible inference in favor of Carroll, the gunshot occurred as he attempted to strike Nelson with the gun. Under such circumstances, no reasonable inference can be drawn that Carroll lacked the required intent to commit the battery.

▮ Finally, we observe that the uncontested facts also evidence an assault from which the intent element of battery will be implied as a matter of law. The rule is widely recognized that when one commits an assault, and in the course of committing the assault that person comes into contact with the person assaulted, the intent element of battery may be supplied by the intent element of the assault. Professors Prosser and Keeton explain:

> "Although a contact ... is ... essential, the intent element of the cause of action [of battery] is satisfied not only if the defendant intends a harmful contact ... upon the plaintiff ... *but also if the defendant intends only to cause apprehension that such a contact is imminent (an assault-type consequence)."* (Emphasis added)(footnotes omitted).

PROSSER & KEETON, THE LAW OF TORTS § 9, at 39 (5th ed.1984). *See also* RESTATEMENT (SECOND) OF TORTS § 13 (1965)("An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, *or an imminent apprehension of such a contact...."* (Emphasis added)).

▮ Because the defendant has committed an assault, the intent element of assault is subsumed into the battery claim even though the defendant contends that the actual harm was

accidental or otherwise unintentional. "The intent required [for battery] is only the intent ... to cause apprehension that such a contact is imminent...." PROSSER & KEETON, THE LAW OF TORTS § 9, at 42 (5th ed.1984). Therefore, one who intends to frighten another by assaulting him or her, and touches this person in a harmful or offensive manner and claims the touching was inadvertent or accidental, is liable for battery, notwithstanding the contention that the actual touching was never intended. *See, e.g., Alteiri v. Colasso,* 168 Conn. 329, 362 A.2d 798, 801 (1975) (affirming liability for battery when minor plaintiff was injured by defendant's throwing of an object into the yard where minor was playing, even though defendant had only attempted to scare the minor). *Cf. Steinman,* 109 Md. at 65, 71 A. at 518 (observing, in denying liability in battery claim, that "[i]t would not be possible ... that an action for assault alone could be maintained"). Thus, the risk is mitigated that a wrongdoer will be found free from liability while the innocent victim suffers the consequences of the wrongful conduct.

Furthermore, under some circumstances, the facts may be such that an intent to cause another's apprehension of immediate physical harm (*i.e.,* an assault) is the only reasonable inference that may be drawn and a defendant would be precluded as a matter of law from presenting a defense of not intending to commit an assault. As we observed in *Handy v. Johnson:*

"Where an assault is charged the authorities show that the jury are to decide whether there was any intention to do any violence or injury; but the authorities also establish, that if in a threatening and rude or angry manner a man points a sword or fork, at another, or shakes his fist in the face of the other, within striking distance, attended with a present ability to strike, although no stroke is given, such act is an assault, notwithstanding the failure to strike. *And the jury cannot infer a want of intention to do violence or injury, merely from the failure to strike, in the absence of any declarations or circumstances indicating an absence of such intention, other than the fact that no blow was given.*

If, however, there are any declarations or circumstances tending to indicate a want of such intention, then the jury are bound to take the declarations or circumstances into consideration, in deciding upon the intention." (Emphasis added).

5 Md. 450, 465 (1854). Thus, absent unusual circumstances, a jury would be precluded in an assault case from finding that one who threateningly pointed a gun at another did not intend to cause apprehension of immediate harm in the other person. Likewise, if one commits an assault and the threatened touching *actually occurs*, the jury also would be precluded from finding a lack of an intent to cause a battery despite the defendant's claim that the actual harm that occurred was not specifically intended.

The evidence is uncontested that Carroll angrily wielded a handgun at Nelson and that he struck Nelson on the side of his head at least once with the loaded handgun. These undisputed facts evidence an assault and battery from which the intent to commit the battery caused by the gunshot may be implied as a matter of law. This conclusion becomes obvious if we assume, for the moment, a modest variation of the facts of this case: Carroll never struck Nelson on the head, but only had pointed the gun at Nelson, not intending to shoot him, only to scare him into paying his debt. If under these revised facts the gun accidentally went off, injuring Nelson, the intent to commit the assault would allow Nelson to recover for the battery; Carroll's assault would fulfill the intent element for battery. Even though under this variation of the facts Carroll never struck Nelson on the head, the evidence would still conclusively demonstrate that a battery occurred because of Carroll's admission and the undisputed evidence that Carroll entered the nightclub wielding the handgun threateningly at Nelson for his failure to pay a debt. Indeed, Carroll's attorney conceded at trial that "[Carroll] shouldn't have gone in there with a gun. He was wrong. *But what he intended to do was to scare him.*" (Emphasis added). Thus, by his own admission, Carroll intended to frighten Nelson into paying his debt by carrying a handgun into the

nightclub. Had Carroll shot Nelson without ever striking him, the assault he committed by carrying a weapon into the nightclub with the present ability to use it and with the admitted desire to "scare him" would have been sufficient to establish the intent element for battery.

It is clear then that, where the only factual difference between our hypothetical and the actual facts of the instant case is the additional fact that a separate battery occurred (Carroll's striking of Nelson on the side of the head), the necessary intent is present so as to result in Carroll's liability for battery for shooting Nelson. The facts are not disputed that Carroll struck Nelson on the head with the handgun, thus committing a battery. *See Saba,* 320 Md. at 49, 575 A.2d at 1242; Part II.B., *supra.* Viewing the facts most favorably to Carroll, the gun discharged accidentally as Carroll went to strike Nelson again. But whether the discharge itself was actually an accident is not germane under these facts, since it is clear that in striking Nelson initially, Carroll committed a volitional act with the "inten[t] to violate the legally protected interest of another in his person." HARPER, JAMES & GRAY, THE LAW OF TORTS § 3.3, at 3:14 (3d ed.1996).

### III.

The level of intent required to maintain a battery action was met in the instant case, at the very least, at the time Carroll went to strike Nelson on the head with the gun as the gun discharged. The shot was fired contemporaneously with the commission of the initial battery. No evidence or argument suggested that there was a break in the chain of events giving rise to the gunshot. No supervening cause severed Carroll's intent to commit the initial assault and battery from the discharge of the handgun. Rather, taking all the factual inferences in the light most favorable to Carroll, the gunshot and the striking of Nelson occurred virtually simultaneously. Carroll's attempt to negate the intent element of battery by claiming the actual shot was an accident is therefore insufficient, as a matter of law, given the conclusive evidence of the prior assault and battery.

The law imposes upon Carroll the responsibility for losses associated with his wrongful actions. It is of no import that he may not have intended to actually shoot Nelson since the uncontested facts demonstrate that he did intend to invade Nelson's legally protected interests in not being physically harmed or assaulted. He violated those interests by committing an assault and battery when he threatened Nelson with the handgun and struck Nelson on the head. Even assuming as we must that Carroll did not intend to inflict the particular damages arising from the gunshot wound, it is more appropriate that those losses fall to Carroll as the wrongdoer than to Nelson as the innocent victim. Therefore, the motion for judgment as to liability should have been granted, with the only question remaining for the jury being the damages resulting from the discharge of the gun.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGEMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**