Filed:  October 19, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 00-2165(L)
(CA-98-1638-AW)

Paul B. Essex, et al.,

                          Plaintiffs - Appellants,

        versus

Prince George's County, Maryland, etc., et al.,

                          Defendants - Appellees.

O R D E R

        The court amends its opinion filed August 21, 2001, as
follows:

        On page 4, first full paragraph, last line -- the phrase "in
favor of Maslousky" is corrected to read "in favor of Corporal
Washington."

                          For the Court - By Direction

                          /s/ Patricia S. Connor
                               Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

PAUL B. ESSEX; DAVID PAUL
MASLOUSKY,
Plaintiffs-Appellants,

v.

PRINCE GEORGE'S COUNTY,
MARYLAND, A Body Corporate and
Politic; KEITH WASHINGTON,
Corporal, Badge #1790, Prince
George's County Police
Department,
Defendants-Appellees,

and

DONALD CROTEAU, Officer, Prince
George's Department of
Corrections; ANTONIO BENTLEY,
Corporal; CHRISTOPHER DOWNING,
Officer, Prince George's
Department of Corrections; JOHN
DOE, Officer, Individually and in his
official capacity, Prince George's
County Police Department,
Defendants.

No. 00-2165

PAUL B. ESSEX; DAVID PAUL
MASLOUSKY,
Plaintiffs-Appellees,

v.

ANTONIO BENTLEY, Corporal,
Defendant-Appellant,

and

PRINCE GEORGE'S COUNTY,
MARYLAND, A Body Corporate and
Politic; KEITH WASHINGTON,

Corporal, Badge #1790, Prince
George's County Police
Department; DONALD CROTEAU,
Officer, Prince George's
Department of Corrections;
CHRISTOPHER DOWNING, Officer,
Prince George's Department of
Corrections; JOHN DOE, Officer,
Individually and in his official
capacity, Prince George's County
Police Department,
Defendants.

No. 00-2222

2

PAUL B. ESSEX; DAVID PAUL
MASLOUSKY,
Plaintiffs-Appellants,

v.

PRINCE GEORGE'S COUNTY,
MARYLAND, A Body Corporate and
Politic; KEITH WASHINGTON,
Corporal, Badge #1790, Prince
George's County Police
Department,
Defendants-Appellees,                              No. 01-1048

and

DONALD CROTEAU, Officer, Prince
George's Department of
Corrections; ANTONIO BENTLEY,
Corporal, CHRISTOPHER DOWNING,
Officer, Prince George's
Department of Corrections; JOHN
DOE, Officer, Individually and in his
official capacity, Prince George's
County Police Department,
Defendants.

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-98-1638-AW)

Argued: May 9, 2001

Decided: August 21, 2001

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Arthur L. ALARCON, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

3

Affirmed in part, dismissed in part, and vacated and remanded in part by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Terrell N. Roberts, III, ROBERTS & WOOD, Riverdale, Maryland, for Appellants. Andrew Jensen Murray, Associate County Attorney, Upper Marlboro, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

David Paul Maslousky ("Maslousky") appeals from the order granting judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure in favor of Corporal Keith Washington of Prince George's County Police Department. Maslousky also appeals from the order granting Corporal Washington's motion to alter the judgment. Maslousky contends that the district court erred in granting Corporal Washington's motion for judgment as a matter of law on his state law battery claim. Maslousky maintains that there was sufficient evidence, when viewed in the light most favorable to him, to support a jury's finding that Corporal Washington committed battery. We agree and vacate the order granting judgment as a matter of law in favor of Corporal Washington.

Maslousky further asserts that the district court abused its discretion by conditionally granting Corporal Washington a new trial pursuant to Rule 50(c)(1) of the Federal Rules of Civil Procedure. We affirm the conditional order granting Corporal Washington's motion for a new trial on the battery claim because we conclude that the jury's verdict that Corporal Washington was liable for battery is

4

inconsistent with its determination that he was not liable for depriving Maslousky of his state or federal constitutional rights. Maslousky also seeks reversal of the order denying his motion for a new trial on his battery and constitutional claims against Corporal Washington and Prince George's County ("County") on the ground that the jury's verdict is irreconcilable. We agree and vacate the order denying Maslousky's motion for a new trial. Finally, Maslousky contends that the district court erred in granting the County's motion to vacate Maslousky's writ of execution of the judgment and stay Maslousky's attempts to enforce the judgment pending final resolution of Corporal Antonio Bentley's appeal. We deny Maslousky's appeal as moot.

In his cross-appeal, Corporal Antonio Bentley seeks reversal of the order denying his motion for a remittitur or, in the alternative, for a new trial on the issue of damages based on his contention that the damages the jury awarded to Paul B. Essex ("Essex") for the injuries he suffered as the result of an illegal strip search are excessive. We conclude that the award was not excessive and affirm the denial of Corporal Bentley's motions. Before discussing the merits of the issues raised by the parties, we summarize the procedural background of this matter.

I

Essex and Maslousky filed a complaint in this matter against Corporal Washington of the Prince George's County Police, Corporal Bentley of the Prince George's County Department of Corrections, Officer Donald Croteau of the Prince George's County Department of Corrections, and the County. In their second-amended complaint, Essex and Maslousky allege in Count One that Corporal Washington committed an assault and battery against Essex and Maslousky and that Corporal Bentley and Officer Croteau committed an assault and battery against Maslousky. The complaint alleges in Count Two that Corporal Washington deprived Essex and Maslousky of their federal constitutional rights in violation of 42 U.S.C. § 1983, and that Corporal Bentley and Officer Croteau violated Maslousky's federal civil rights under section 1983.

In Count Three, the complaint alleges that Corporal Washington deprived Essex and Maslousky of rights protected under the Maryland

5

Constitution, and that Corporal Bentley and Officer Croteau deprived Maslousky of the right to be free from unreasonable searches and seizures under the Maryland Constitution. The complaint further alleges in Counts Four, Five, Six, and Seven, that Corporal Washington is liable to pay damages to the plaintiffs for subjecting them to false arrest, false imprisonment, invasion of privacy, and malicious prosecution.

In Count Eight, the complaint alleges that the County is liable pursuant to section 1983 for its failure to establish a uniform policy to supervise, train, and discipline its police force properly on strip searches and violations of the federal constitutional rights of its citizens.

On May 2, 2000, the court granted Essex's and Maslousky's oral motion to dismiss the complaint against Officer Croteau. On May 3, 2000, the court granted Essex's and Maslousky's oral motion to dismiss Count One (battery) against Corporal Bentley.[1]

This matter was tried before a jury. At the close of the plaintiffs' case-in-chief, and again at the conclusion of the evidence, the defendants moved for judgment as a matter of law pursuant to Rules 50(a) and 50(b) of the Federal Rules of Civil Procedure. The district court took both motions under advisement. The jury returned its verdict in favor of Essex and against Corporal Washington on Count One (battery) and awarded nominal damages in the amount of $1.00. The jury also found in favor of Maslousky and against Corporal Washington on Count One and awarded $200,000.00 in compensatory damages and $10,000.000 in punitive damages. The jury returned its verdict in favor of Maslousky and against Corporal Bentley in Count Two (violation of section 1983) and in favor of Maslousky against Corporal Bentley and the County on Count Three (violation of the Maryland Constitution). The jury awarded Maslousky compensatory damages in the amount of $50,000.00.

_____

[1] At some point during the trial, Essex and Maslousky apparently requested that Count Six (invasion of privacy) be dismissed and the court granted that motion. The joint Appendix provided to this court does not show when this occurred.

6

On May 16, 2000, the district court entered an order granting judgment in favor of Essex against Corporal Washington for the sum of $1.00. Judgment was entered in favor of Maslousky against Corporal Bentley and the County for the sum of $50,000.00. Judgment was entered in favor of Maslousky against Corporal Washington for the sum of $210,000.00. The May 16, 2000, judgment also memorializes the district court's oral rulings dismissing defendant Donald Croteau with prejudice, dismissing Count One as to Corporal Bentley, and dismissing Count Six as to all the defendants.**2**

On May 16, 2000, the defendants filed a motion for "judgment notwithstanding the verdict or, in the alternative, for a new trial or amendment of the judgment." On July 11, 2000, the court entered an order granting judgment as a matter of law with respect to the battery claim against Corporal Washington. It amended the judgment and vacated the award of $210,000.00 in damages against Corporal Washington. It also denied the Defendants' motion to amend the judgment as to the award of damages in the amount of $50,000.00 in favor of Maslousky against Corporal Bentley and the County.

On July 14, 2000, Maslousky filed a motion for a new trial in light of the order granting Corporal Washington's motion for judgment as a matter of law, and a motion to amend the judgment. In a memorandum opinion filed on August 21, 2000, the court denied Maslousky's motions.

In its August 21, 2000 opinion, the court also stated that it would amend its order granting the motion for judgment as a matter of law to clarify the court's intent that its judgment in favor of Essex on the battery count should not be disturbed. In addition, the court also informed the parties that, pursuant to Rule 50(c)(1) of the Federal Rules of Civil Procedure, it would conditionally grant Corporal Washington's motion for a new trial should the judgment as a matter of law be reversed on appeal. The court denied Maslousky's motion for a new trial, and his motion for reinstatement of the judgment against Corporal Washington. In its August 21, 2000 order, the court

_____

**2** It is not clear from the joint Appendix when or if Counts Four and Five were dismissed. On appeal, the parties do not contest the finality of the court's May 16, 2000, judgment.

entered judgment in favor of Essex against Corporal Washington for $1.00, and in favor of Maslousky against Corporal Bentley and the County for the sum of $50,000.00. The court also granted Corporal Washington's motion for judgment as a matter of law on Maslousky's battery claim.

Maslousky and Essex filed a timely notice of appeal on August 30, 2000 from the order filed on July 11, 2000 and the order filed on August 21, 2000. Corporal Washington and Corporal Bentley have cross-appealed.

II

Maslousky contends that the district court erred in granting judgment as a matter of law in favor of Corporal Washington on the battery claim because there is evidence in the record that would support a finding that Corporal Washington's arrest of Maslousky for the common-law offense of hindering was not supported by probable cause. He argues that "[t]he touching of Maslousky by Washington was intentional, it was without Maslousky's consent, and it was harmful and/or offensive."

"In reviewing a district court's decision on a Rule 50(b) motion, we view all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in his or her favor." Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 279 (4th Cir. 1999). Judgment as a matter of law should only be granted "if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." Id.

Our task then, in reviewing the merits of this contention, is to determine whether, viewing all the evidence in the light most favorable to Maslousky, there is substantial evidence to support the jury's finding that Corporal Washington did not have probable cause to arrest Maslousky for hindering.

This unfortunate contretemps arose out of a two-car traffic accident that occurred approximately a half-mile from Maslousky's residence.

8

Immediately prior to the collision, Essex visited Maslousky at his residence. Maslousky is an automobile repair mechanic and a good friend of Essex. Essex returned the automobile he had borrowed from Maslousky while he repaired Essex's Chrysler. Approximately one-half of a mile from Maslousky's residence, Essex's vehicle was struck on the passenger side by another automobile as Essex drove through an intersection controlled by traffic lights. Essex testified that he did not see the light. Essex approached the other vehicle to determine the condition of its occupants, Mr. and Mrs. Wang, as well as to express his regret that the accident had occurred.

A passenger in a vehicle not involved in the collision called 911 on his cell phone to summon an ambulance and the police. Essex borrowed the cell phone and called Maslousky and asked him to come to the scene of the accident because the Chrysler appeared to be inoperable. Maslousky drove to the scene, inspected the damage to the Chrysler and then drove off to borrow a tow truck.

Corporal Washington was dispatched to investigate the collision. He was accompanied by Officer Venus Atkinson, a police recruit who was being trained by Corporal Washington. At trial, parties presented conflicting evidence regarding the events that occurred when the officers arrived at the scene of the accident.

Essex testified that when Corporal Washington first approached him the officer's demeanor was hostile. Corporal Washington asked Essex why he caused the accident. Essex told him he did not know if he had caused the accident but he had not seen the traffic light. Corporal Washington told Essex that he could arrest him because an accident that causes personal injury is very serious. Essex responded: "Well, just do what you have to do." Two witnesses to the accident, Anne Marie Curtis and Maniram Tiwari, observed Essex's interaction with Corporal Washington. Ms. Curtis testified that Corporal Washington "was very rude and short" when he spoke to Essex. Mr. Tiwari testified that Corporal Washington was pompous, and that he exhibited a "lack of patience [and] a lack of tolerance," and acted as if he had a chip on his shoulder.

Following this exchange, Corporal Washington walked away from Essex. After Maslousky returned to the scene with a tow truck, Cor-

9

poral Washington handed Essex two traffic citations. Essex signed them and placed them in his shirt pocket. Essex testified that he did not refuse to sign the tickets and was aware, as a member of the bar, that signing a traffic citation is not an admission of guilt, but instead is "a guarantee that you will appear in court."

When Corporal Washington handed Essex the traffic citations, he stated: "I know you caused this accident." Essex replied: "I thought that such a decision was for a court to make." Corporal Washington responded: "Out here, I am the court." Corporal Washington then stated: "I ought to arrest you. I ought to take you in." Essex replied: "You do whatever you have to do." Essex then turned and started to walk away. Corporal Washington grabbed his arm and pulled him to the driver's side of the police car. He pushed Essex down on the car, pulled his feet apart with his foot and said: "Spread your legs, put your hands on the hood of the car."

Corporal Washington then conducted a pat-down search. At this point, Essex took one hand off the hood of the police car, turned around, and asked Corporal Washington: "Could you tell me what's going on? What happened?" Corporal Washington then grabbed Essex and threw him over the front of the car. Essex saw Mr. Wang standing ten feet away. Essex stated: "Mr. Wang, please don't go, I need a witness." Corporal Washington told Mr. Wang that he could go. Some time thereafter, Corporal Washington told Mr. Wang: "I thought I told you to go." Mr. Wang got into his car and drove away.

Corporal Washington also advised Maslousky that he could leave. Maslousky told Corporal Washington that he was there to tow Essex's car and needed the keys to the Chrysler. Someone handed the keys to Maslousky. He returned to the sidewalk, approximately fifteen feet away from Corporal Washington. Essex then stated to Maslousky: "Please don't leave." Corporal Washington again told Maslousky to leave. Maslousky replied: "Okay. But you need to start treating him like an adult and not a child." Corporal Washington replied: "You know, I could arrest you. I could put you in jail with your buddy." Maslousky responded: "Look, I'm not trying to go to jail. I'm just saying you're not treating him fairly." Thereupon Corporal Washington stated: "That's it. You're under arrest for hindrance." He pro-

10

ceeded to grab Maslousky's wrist and handcuff him. He ordered Maslousky to sit on the wet grass.

Corporal Washington called for backup. When the officers arrived, Maslousky was placed in a police car. Essex was left at the scene after the officers left. When Officer Atkinson asked Corporal Washington what they should do with Essex, Corporal Washington replied: "Fuck him, let him walk."

Maslousky testified that Corporal Washington taunted him en route to the jail. Maslousky was so frightened by Corporal Washington's demeanor that he began to pray out loud. Corporal Washington then stated: "Who's that God you're praying to? Who is your God? Let's see your God get you out of jail." Corporal Washington also asked Maslousky if he had ever been in jail before and stated: "You know, Bubba's in jail and Bubba's going to have his way with you." As they arrived at the jail, Corporal Washington told Maslousky that he would spend the whole weekend in jail, and if and when he was released from jail, Maslousky would not be able "to get a job picking cotton."

At the jail, Maslousky was placed in the custody of corrections officers including Corporal Bentley. Corporal Bentley subjected Maslousky to a strip search in violation of the County's Correctional Center policy. Maslousky was released on his own recognizance. The charges against Maslousky were subsequently disposed of when the prosecutor entered a nolle prosequi.

Corporal Washington offered a different version of these events which we summarize below in our discussion of the validity of the order granting his motion for a new trial. In determining whether to grant a motion for judgment as a matter of law,"the court's sole duty is to examine the sufficiency of the evidence tendered by the party opposing the motion. If the evidence is sufficient, the judge should not direct the verdict." Ellis v. Int'l Playtex, Inc., 745 F.2d 292, 298 (4th Cir. 1984).

Under Maryland law, "[a] police officer who has probable cause to believe that a felony or misdemeanor is being committed in the officer's presence or within the officer's view, may arrest without a warrant any person whom the officer may reasonably believe to have

11

committed such offense." Md. Code 1957, Art. 27,§ 594B. The common-law offense of hindering requires proof of the following elements:

> (1) A police officer engaged in the performance of a duty; (2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty; (3) Knowledge by the accused of facts comprising element (1); and (4) Intent to obstruct or hinder the officer by the act or omission constituting element (2).

DiPino v. Davis, 729 A.2d 354, 362 (Md. 1999). "The rule of `probable cause' [is] a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such a belief than would justify conviction but more evidence than that which would arouse a mere suspicion. . . ." Graham v. State, 212 A.2d 287, 289 (Md. 1965).

Viewing the facts in the light most favorable to Maslousky, a rational jury could reasonably infer that Corporal Washington did not have probable cause to arrest Maslousky for hindering. The jury could have found that Maslousky observed Corporal Washington angrily scolding and physically restraining a friend who had, at most, caused a traffic accident by failing to stop at a red light. According to Maslousky's version of the facts, at the time he was ordered to leave, Maslousky was standing 15 feet away from Corporal Washington when he requested the officer to treat Essex like an adult. These facts are not sufficient to satisfy the elements of hindering. See DiPino, 729 A.2d at 366 (holding that standing ten feet away from suspect and loudly revealing identity of undercover police agents was insufficient to constitute hindering where no evidence of intent to hinder or effect of hindering and officer was not in harm's way when remark made); In re Antoine H., 570 A.2d 1239, 1243 (Md. 1990) (holding that failure to open the door to police, lying to police about the presence of a fugitive, and general lack of cooperation with police were insufficient to constitute hindering); Cover v. State, 466 A.2d 1276, 1285 (Md. 1983) (holding no hindering where defendant defied officer's order to leave area via a specific route and then honked horn in area where she knew officers were conducting surveillance); cf. Barrios v. State, 702 A.2d 961, 970 (Md. Ct. Spec. App. 1997) (affirming hindering convictions where a number of defendants shoved against officers and

12

into a crowd, chanted at the officers, refused to back up when ordered to do so, and pulled suspect away from officers who were attempting to effect an arrest).

Having determined that Maslousky presented sufficient evidence to support a finding that he was arrested without probable cause, we next consider whether the facts also demonstrated that Corporal Washington committed a battery. Under Maryland law, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." Nelson v. Carroll, 735 A.2d 1096, 1099 (Md. 1999). "The intent element of battery requires not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being through a harmful or offensive contact or an apprehension of such a contact." Id. at 1101. Thus, while "a purely accidental touching, or one caused by mere inadvertence, is not enough to establish the intent requirement for battery," id., "the intent required is not a specific intent to cause the type of harm that occurred." Id. at 1100.

Under Maryland law, "a police officer, who might otherwise have the benefit of [public official] immunity, does not enjoy it if the officer commits an intentional tort or acts with malice." DiPino, 729 A.2d at 370. Maslousky offered sufficient evidence to show that Corporal Washington intended to touch Maslousky in placing handcuffs on him. The district court erred in granting Corporal Washington's renewed motion for judgment as a matter of law.

III

We now turn to Maslousky's contention that the district court abused its discretion by conditionally granting Corporal Washington a new trial under Rule 50(c)(1) of the Federal Rules of Civil Procedure. We have heretofore restricted our summary of the evidence to Essex and Maslousky's account of the events, as we are required to do in reviewing the district court's grant of judgment as a matter of law under Rule 50(b). Corporal Washington's testimony conflicted with the plaintiffs' evidence in critical details. Corporal Washington testified that when he arrived at the scene, Essex appeared agitated and was reluctant to talk to the officers. After Corporal Washington determined that Essex had caused the accident, Essex refused to sign

13

the two traffic citations Corporal Washington prepared. Corporal Washington advised him that failure to sign the tickets could lead to his arrest. Essex responded "Do what you gotta do." When Essex turned to walk away, Corporal Washington believed that Essex might attempt to leave the scene of the accident. He decided to arrest Essex for failure to sign the citations and, according to procedure, he conducted a "succinct" pat-down search of Essex.

During the search, Maslousky approached Corporal Washington from behind and asked him for the keys to Essex's car. Corporal Washington asked Maslousky to step back and then gave him the keys. At that point in time, Essex started screaming at Mr. Wang and Maslousky not to leave. Maslousky was standing only three to five feet from Corporal Washington. Maslousky said: "Don't touch him. Get your hands off of him and treat him like an adult." Again, Corporal Washington informed Maslousky, "Step back. Move away. You're hindering. You can be placed under arrest." Corporal Washington was concerned by Maslousky's proximity to him and felt that the situation could become volatile. Thus, he called for backup. When Maslousky "continued to bark orders" at him, Corporal Washington placed him under arrest. Corporal Washington made Maslousky sit on the ground because they were near a roadway and he wanted to prevent him from inadvertently wandering into the road in handcuffs and getting injured. Corporal Washington testified that he neither threatened nor taunted Maslousky on the way to the station.

Rule 50(c)(1) provides in pertinent part: "If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed. . . ." Fed. R. Civ. P. 50(c)(1). We review a district court's grant of a conditional new trial for an abuse of discretion. See Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 200 (4th Cir. 2000). A new trial is warranted if (1) the verdict is against the clear weight of the evidence; (2) the verdict is based upon evidence which is false; or (3) the verdict will result in a miscarriage of justice. Atlas Food Sys. & Servc., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996). "In considering a new trial motion, the district court may weigh the evidence and consider the credibility of the witnesses."

14

Conner, 227 F.3d at 200. Moreover, "the proper remedy for an inconsistent verdict [is] a new trial." Atlas Food Sys., 99 F.3d at 598.

The jury's responses to the interrogatories on the verdict sheet regarding the tort of battery and the constitutional claims in this matter are irreconcilable. The jury found that Corporal Washington was not liable to Essex and Maslousky for depriving them of their rights to be free from an illegal arrest or an unreasonable search and seizure under the Fourth Amendment of the United States Constitution and the Maryland Constitution. The jury also concluded, however, that Corporal Washington was liable to Essex and Maslousky for battery. The plaintiffs' battery and constitutional claims against Corporal Washington hinged on the same underlying contentions: Corporal Washington searched Essex and arrested Maslousky without probable cause. Yet, the jury found in favor of the plaintiffs on the battery claims and in favor of the defendants on the constitutional claims. Because the jury was not asked to decide in a special verdict whether Corporal Washington had probable cause to search Essex and arrest Maslousky, it is impossible for this court to determine the basis for the jury's inconsistent verdicts. The jury could have determined that Corporal Washington lacked probable cause for the search of Essex and the arrest of Maslousky and erroneously found against them on the constitutional claims. Just as plausibly, the jury could have determined that Corporal Washington had probable cause for the search of Essex and the arrest of Maslousky and erroneously found against him on the battery claims.

We recognize that an appellate court must "harmonize seemingly inconsistent verdicts if there is any reasonable way to do so." Atlas Food Sys., 995 3d at 599. After reviewing the verdicts, we are unable to harmonize the verdicts without speculating regarding the jury's determination of the issue of probable cause.**3**

_____

**3** The jury instructions make clear that the jury was aware that lack of probable cause was an element of both the constitutional claims and the state tort claims. "Defendant's Requested Jury Instruction No. 1 (Use of Force)" provides in pertinent part: "The Fourth Amendment's prohibition against unreasonable seizures protects not only against arrests without probable cause, but also against the use of excessive force in making arrests and detentions that are themselves supported by probable cause."

15

The district court conditionally granted Washington a new trial because "the evidence does not justify a verdict in favor of Maslousky on the battery claim," and "the evidence in the current record does not justify an award in the amount $200,000 on the battery claim." We need not decide whether the court's reasons for granting a conditional motion for a new trial are supported by the record. We must affirm the district court's July 11, 2000 order and its August 21, 2000 opinion because the jury's verdicts on the constitutional claims are inconsistent with its finding on the battery count in favor of Maslousky. See Mann v. Haigh, 120 F.3d 34, 36 (4th Cir. 1997) ("[W]e may affirm the judgment of the district court on any basis that the record fairly supports.").

Thus, the district court did not abuse its discretion by granting Washington a new trial on Maslousky's battery and constitutional claims. We are also persuaded that Maslousky is entitled to a new trial based on the inconsistency of the verdict rejecting his constitutional claims but finding in his favor on his state law tort claim.[4]

_____

"Defendant's requested Instruction No. 3 (Right to Arrest)" indicates that "[a] police officer may arrest a motorist whom the officer has probable cause to believe has refused to sign a traffic citation." "Defendant's Requested Instruction No. 4 (Probable Cause)" defines probable cause. "Defendant's Requested Instruction No. 5 (Search of Person Incident to Lawful Arrest)" provides in part, that "[a] police officer may search a motorist's person if the officer has probable cause to place the motorist under arrest." Finally, "Defendant's Requested Instruction No. 6 (Privilege to Arrest)" instructs in part, "The issue in this case, then, is whether officer Washington had probable cause to believe that Mr. Maslousky hindered Washington in the performance of his duties. . . . Even if, upon retrospect, you conclude that officer Washington did not have the right to arrest the plaintiffs, he nonetheless cannot be held liable for the state tort claim unless you also find that he acted with malice, that is, conduct evincing improper motivation, ill will, or evil intent."

[4] Maslousky argues that Washington "waived any right to obtain any relief based upon an inconsistent verdict" by failing to request that the issues be resubmitted to the jury for further deliberations. We reject this argument because attorneys for both parties lodged timely objections to the inconsistent verdict prior to the discharge of the jury. Cf. White v. Celotex Corp., 878 F.2d 144, 146 (4th Cir. 1989) (per curiam) (holding

16

For the first time in this appeal Essex requests that we grant him a new trial on the ground that the verdicts are inconsistent. We decline to consider the merits of this contention because Essex failed to preserve this issue in the district court. See Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999) ("Generally, issues that were not raised in the district court will not be addressed on appeal.").

IV

In his cross-appeal, Corporal Bentley contends that the district court erred in refusing to remit the $50,000 compensatory damages award in favor of Maslousky on his battery claim, or in the alternative, grant Corporal Bentley a new trial on the issue of damages. We review the denial of a motion for remittitur or for a new trial for an abuse of discretion, "giving `the benefit of every doubt to the judgment of the trial judge.'" Konkel, 165 F.3d at 280 (citation omitted).

_____

failure to object to verdict prior to the discharge of jury waives new trial). The record makes clear that after the jury foreperson read the verdict but before the judge discharged the jury, both parties objected to the inconsistent verdict. In a colloquy with the judge at a side-bar, the attorney for the defendants initially requested a mistrial and then requested a new trial because of the irreconcilable verdict. In the same conversation, the attorney for Maslousky and Essex asked the judge to return the jury to the jury room for five minutes while he considered the inconsistencies in the verdict. The judge rejected the attorneys' requests, cut short the discussion and instead discharged the jury, instructing the attorneys to file post-trial motions addressing the inconsistency in the verdict. We are aware that "[p]recedent . . . favors resubmission of a contradictory verdict." Hafner v. Brown, 983 F.2d 570, 575 (4th Cir. 1992); see also Brode v. Cohn, 966 F.2d 1237, 1239 (8th Cir. 1992) ("[I]f `trial counsel fails to object to any asserted inconsistencies and does not move for resubmission of the inconsistent verdict before the jury is discharged, the party's right to seek a new trial is waived.'" (citation omitted)). Maslousky has cited no authority, and we can discover none, for the proposition that a party who timely objects to an inconsistent verdict but does not request the proper relief, waives his or her right to a new trial. In any event, under the circumstances of this case, we conclude that Washington fairly preserved the issue of the inconsistency of the verdict.

17

We affirm on the grounds set forth by the district court in its memorandum opinion dated July 11, 2000. We also note that the amount the jury awarded Maslousky is commensurate with other awards in illegal strip-search cases. See, e.g., Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1276 n.11 (7th Cir. 1983) (giving a range of $15,000 to $112,500 in strip-search cases); Joan W. v. City of Chicago, 771 F.2d 1020, 1025 (7th Cir. 1985) (holding reasonable a $75,000 award for a strip-search pursuant to a traffic stop).

V

One final issue requires our review. On December 5, 2000, Maslousky attempted to execute his judgment against the County by filing a writ of execution. The County responded by filing a motion to quash the writ of execution or to stay the enforcement of the judgment pending Bentley's cross-appeal. The County argued that because the judgment against the County was founded solely on its vicarious liability for Bentley's actions, a successful appeal by Bentley would eliminate the basis for the judgment against the County. Thus, the County maintained, if Bentley prevailed in his appeal, the County would seek relief from the judgment under Rule 60(b) of the Federal Rules of Civil Procedure, which permits a district court to relieve a party from a final judgment in certain circumstances. The district court granted the County's motion to quash, vacated the writ of execution and stayed "any further attempts" by Maslousky to enforce the judgment against the County "pending final resolution of the appeal now pending before the United States Court of Appeals for the Fourth Judicial Circuit." Maslousky timely appealed that order.

Maslousky contends that the district court erred in granting the stay because the County cannot seek collateral relief from the judgment under Rule 60(b) without having timely appealed the judgment. We do not reach Maslousky's contention because Bentley has not prevailed in his cross-appeal. "We only decide `Cases' and `Controversies.'" In re Pruett, 133 F.3d 275, 278 (4th Cir. 1997) (citing U.S. Const. art. III, S 2). "`[A]n appeal should be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant "any effectual relief whatever" in favor of the appellant.'" Id. (citing Calderon v. Moore, 518 U.S. 149, 150 (1996) (per curiam)). Conse-

18

quently, we dismiss Maslousky's appeal of the district court's grant of the stay as moot.

The district court's grant of judgment as a matter of law to Corporal Washington is VACATED.

The district court's conditional grant of a new trial to Corporal Washington is AFFIRMED.

The district court's denial of Maslousky's motion for a new trial on his battery and constitutional claims against Corporal Washington and the County is VACATED and REMANDED.

The district court's order denying Corporal Bentley a remittitur, or a new trial on the issues of damages is AFFIRMED.

Maslousky's appeal of the district court's stay of the judgment against the County is DISMISSED.

AFFIRMED IN PART, DISMISSED IN PART,
AND VACATED AND REMANDED IN PART

19